IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARROD FAZON, | : | |
|     *Petitioner*, | : | CIVIL ACTION |
| v. | : | No. 16-4913 |
| | : | |
| JOSEPH TERRA *et al.*, | : | |
|     *Respondents.* | : | |

**REPORT AND RECOMMENDATION**

**HON. JOSÉ RAÚL ARTEAGA**                                                                                                 October 10, 2025
**United States Magistrate Judge**[1]

Sharrod Fazon is serving a sentence of forty-seven to ninety-seven years at SCI-Phoenix[2] after a Philadelphia jury found him guilty of two counts of third-degree murder for the deaths of Dominick Riddick and Robert McKinnon, Jr., after they were shot multiple times while inside a parked vehicle in 2001. Fazon was also convicted for related assault and firearms offenses. *See Commonwealth. v. Fazon*, No. CP-51-CR-0901301-2001

---

[1] Chief United States District Judge Wendy Beetlestone referred Fazon's *habeas* Petition to United States Magistrate Judge David R. Strawbridge pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF 5.) It was reassigned to me on May 20, 2024, following Judge Strawbridge's retirement. (ECF 30.)

[2] Fazon's *habeas* Petition spells his name as "Sharrod Fazon" (ECF 1 at 1), as do documents in the underlying state court proceedings, so the Court uses that spelling. However, asked to spell his name at an October 18, 2019 hearing, he spelled his last name as Faison: "Sharrod Faison, S-H-A-R-R-O-D, F-A-I-S-O-N." (N.T. 10/18/2019 at 23.) His Pennsylvania Department of Corrections record lists the following "also known as" names: Sherod Fairson, Sherod Faison, Sheron Faison, and Sherron Faison. *See* Sharrod Fazon, Inmate No. FG2177, https://inmatelocator.cor.pa.gov/#/Result (last visited Sept. 25, 2025).

1

(Pa. Ct. Comm. Pl. Phila. Cnty.). He petitions this Court for a Writ of *Habeas Corpus* under 28 U.S.C. § 2254. He contends that *habeas* relief is due because newly discovered evidence demonstrates his actual innocence, he received ineffective assistance of trial counsel, and the prosecutor's repeated misconduct deprived him of a fair trial. (ECF 17 at ECF p. 6-17.) Fazon admits his Petition is untimely but submits this Court should consider its merits because he has made a showing of actual innocence under *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). (ECF 17 at ECF p. 3, 17.) Because his claims are untimely and he meets no timeliness exceptions, I respectfully recommend dismissing Fazon's Petition with prejudice.

I.  **BACKGROUND**

   A.  **Events Leading to Trial and Conviction**

On the night of June 12, 2001, Curtis McNeely was driving teenage passengers Riddick, McKinnon, and Robert Wilson in a Dodge Caravan around Southwest Philadelphia. (N.T. 12/16/2002 at 37-39, 104; N.T. 12/17/2002 at 84-85, 89.) After parking on 72nd Street near the Paschall projects, McNeely saw his friend Richard Shimoyama sitting on a wall and exited the Caravan to talk to him. (N.T. 12/16/2002 at 41-42, 106; ECF 37-1 at ECF p. 391.) Wilson remained in the front passenger seat with Riddick and McKinnon in the back. (N.T. 12/16/2002 at 42.)

While they waited, a man approached the Caravan and asked, "[W]hat are you all doing out here?" (*Id.* at 43.) The man put a gun through the driver side window and fired six to eight shots. (*Id.* at 107; ECF 37-1 at ECF p. 404.) As Wilson fled through the passenger side window, a bullet grazed his back. (N.T. 12/16/2002 at 43; ECF 37-1 at

2

ECF p. 403.).) Riddick and McKinnon suffered fatal wounds to the head and to the chest and arm, respectively. (N.T. 12/17/2002 at 84-85, 90-91; ECF 37-1 at ECF p. 346-50, 353-56.) Ballistics analysis of physical evidence recovered from the scene indicated that all bullets were fired from a .40 caliber semiautomatic Glock handgun, but no gun was recovered. (*See* N.T. 12/16/2002 at 16-18; N.T. 12/18/2002 at 4-25, 95.) Law enforcement never determined the shooter's motive. (N.T. 12/16/2002 at 18.)

Police interviewed Wilson on June 13, 2001. (ECF 37-1 at ECF p. 401-06 (Robert Wilson Investigation Interview Record).) Wilson described the assailant as "about [twenty-three] to [twenty-four] years old, about . . . 6['0"], dark complected, . . . wearing all dark clothes, [and] about 175 [pounds]." (*Id.* at ECF p. 402.) On June 20, 2021, Wilson identified Fazon's picture in a photo array showing eight men with beards. (*Id.* at ECF p. 332.)

At trial, however, Wilson testified he was "mainly focused on the gun" and could only see the "bottom half" of the shooter's face, specifically his mouth and beard. (N.T. 12/16/2002 at 45, 68.) He described the shooter as being bearded and about 6'1" to 6'2" in height and 200 pounds. (*Id.* at 43-44.) Wilson confirmed that he identified Fazon in the photo array based on his beard but could "[could not] say he [was] the person who came over to the van" in court. (*Id.* at 45-46.)

McNeely gave police statements on June 13 and 20, 2001. (ECF 37-1 at ECF p. 333-35, 338-42 (Curtis McNeely Investigation Interview Records).). On June 13, he told police that there were two shooters and that someone had said, "Are you looking for something?" just before the gunfire. (*Id.* at ECF p. 339-40.) On June 20, he said that he

3

had not been honest before because he "had just seen [his] friends killed" and "was scared," as he "knew the guy that did the shooting." (*Id.* at ECF p. 333.) He stated that he heard gunshots, looked over, observed Wilson "come out running," and then saw "Little Man," whom he knew from prison, "coming from around the front of the van" with "the gun in his hand." (*Id.* at ECF p. 334.) McNeely identified Fazon as the shooter from the same eight-person photo array that Wilson had viewed. (*Id.* at ECF p. 337.)

At trial, McNeely testified that he heard gunshots, "went down to the ground," saw Wilson exit the Caravan and flee, and then "ducked down and ran" without seeing the shooter or a gun. (N.T. 12/16/2002 at 110-11, 122, 128.) He repeatedly denied many of the answers in his June 20 statement and accused the prosecutor and police of having told him who the shooter was and how to testify. (*Id.* at 112-36.) McNeely then admitted that he saw someone "coming from around the front of the van" before fleeing. (*Id.* at 129-30, 134.) He confirmed that he knew Fazon from prison by the name "Littles" or "Little Man" and that he had signed the photo array identifying Fazon. (*Id.* at 136, 138.) However, he claimed that police had "told [him] to sign it" and that he had actually "pointed out" "three pictures." (*Id.*) He testified that he "would have signed" the statement and photo array "whether [they were] true or not" so that he could go to McKinnon and Riddick's funerals later that day but admitted that he wanted to help detectives catch the murderer when he signed them. (*Id.* at 160-62, 168.) He also testified that he had been shot three times during the month after he had identified Fazon. (*Id.* at 168-69.) The trial court instructed the jury that McNeely's shooting had nothing to do with Fazon. (12/17/2002 at 138.)

4

Police interviewed Shimoyama on June 20, 2001. (ECF 371- at ECF p. 391-93.) He told police he had been talking to McNeely on the night of the murder when he saw a man he knew as "Littles" cross the street, approach the driver's side of the Caravan with a gun, and say, "Do you want something[?] [Y'all] lost something?" before firing approximately eight shots at the three passengers. (*Id.*) Shimoyama said McNeely had exclaimed, "They're my boys, what you doing Littles?" and that one of the passengers exited the car and fled. (*Id.* at ECF p. 391, 393.) Shimoyama stated he had known "Littles" for about five to six months and provided information about where his mother lived. (*Id.* at ECF p. 392.) Officers showed him 861 photographs on a computer, and he identified a photograph of Fazon as "Littles." (*Id.* at ECF p. 383, 392, 395.) He also informed officers that Fazon's "beard [was] longer and fuller" at the time than it was in the picture. (*Id.* at ECF p. 392.)[3]

Shimoyama subsequently testified at Fazon's August 21, 2001 preliminary hearing. (ECF 37-1 at ECF p. 378-90 (Preliminary Hearing Transcript).) The prosecutor provided defense counsel with Shimoyama's criminal history and a copy of his June 20, 2001 statement. (*Id.* at ECF p. 379.) Shimoyama testified that he was in custody on an open drug case, but the Commonwealth had not offered him anything in exchange for his testimony. (*Id.* at ECF p. 380.) He confirmed that the handwriting on the police statement was his and that he had signed it and his identification of Fazon. (*Id.* at 380-

---

[3] A detective testified that Fazon had a much shorter beard when he was taken into custody on June 21, 2001. (N.T. 12/18/2002 at 58-59.) The parties stipulated that Fazon had a "longer beard" on March 31, 2001, just like at trial, but had a "short," "cut beard" on June 21, the week after the murder. (*Id.* at 59-60.)

5

81.) However, he asserted he had only signed the documents because detectives had coerced him and he wanted to leave their custody. (*Id.* at 382-84.) He testified that he could not recall saying that: (1) Fazon was the shooter, had put his gun inside the Caravan, and had exclaimed something before the shooting, (2) eight shots were fired, or (3) McNeely drove the Caravan off afterward. (*Id.* at 381-84.) However, he confirmed that he knew Fazon from the neighborhood and that they "used to speak." (*Id.* at 382.)

The trial court subsequently held an unavailability hearing during trial where officers testified that they could not locate Shimoyama. (*See, e.g.*, N.T. 12/17/2002 at 99, 113-18). The trial court ruled that he was unavailable and allowed the Commonwealth to introduce his former testimony. (*Id.* at 133-34.) The prosecutor who had handled the preliminary hearing then read the entirety of Shimoyama's testimony into the trial record, and detectives did the same with McNeely's statements. (*Id.* at 39-44, 68-71, 177-92). There was no further witness testimony at the trial identifying Fazon as the shooter. The court admitted all police statements and signed photo arrays into evidence, along with other documentary and photographic evidence. (N.T. 12/18/2002 at 73.) The defense presented no witnesses, but the parties stipulated to McNeely having convictions for theft and robbery and Shimoyama having convictions for robbery and burglary. (*Id.* at 73, 85.)

Having heard Wilson's, McNeely's, and Shimoyama's conflicting prior statements, preliminary hearing testimony, and trial testimony along with the other evidence presented at trial, a Philadelphia County jury, after three days of deliberation, convicted Fazon on two counts of third-degree murder for the deaths of McKinnon and Riddick, aggravated assault against Wilson, and possession of an instrument of crime.

6

(*See* N.T. 12/18/2002 at 151-152, N.T. 12/19 to 12/20/2002, 12/23/2002 at 14-16; ECF 37-1 at ECF p. 200.)  The trial court imposed consecutive sentences for an aggregate sentence of forty-seven to ninety-seven years in prison.  (N.T. 02/12/2003 at 12.)

      **B.**      **State Post-Conviction and Federal *Habeas* Proceedings**

Fazon filed an unsuccessful direct appeal, raising, among other claims, several allegations of prosecutorial misconduct. His convictions were affirmed. *See Commonwealth v. Fazon*, No. 797-EDA-2003, 860 A.2d 1127 (Pa. Super. Ct. Aug. 16, 2004) (table),[4] *allocatur denied,* No. 450-EAL-2004, 872 A.2d 171 (Pa. 2005) (table). Then, in his amended first Post-Conviction Relief Act ("PCRA") petition, he raised several trial counsel ineffectiveness claims.  (ECF 37-1 at ECF p. 34, 44, 53.)  The state courts denied relief.  *Commonwealth v. Fazon,* No. 1907-EDA-2006, 932 A.2d 252 (Pa. Super. Ct. July 10, 2007) (table),[5] *allocatur denied*, No. 380-EAL-2007, 952 A.2d 674 (Pa. 2008) (table).  Fazon filed a second PCRA petition on August 29, 2008, which was dismissed as untimely on March 16, 2010.  (ECF 37-1 at ECF p. 6; N.T. 10/18/2019 at 44.)[6]  The state court docket

---

[4] This unpublished memorandum opinion is available on the docket at ECF 14-2 and at ECF 37-1 at ECF p. 130-46.

[5] This unpublished memorandum opinion is available on the docket at ECF 14-3.

[6] I received electronic copies of Notes of Testimony for December 26, 2019 (PCRA evidentiary hearings), Fazon's amended third PCRA petition, and the PCRA court's January 24, 2020 opinion from the Philadelphia District Attorney's Office's Federal Litigation Unit because they were not included in the state court record produced in response to the Court's July 17, 2024 Order.  (*See* ECF 36.)  The electronic records will be transmitted to Judge Beetlestone.

reflects that the Superior Court then dismissed Fazon's appeal of the untimeliness dismissal for failure to file briefs on June 17, 2010. (ECF 37-1 at ECF p. 7.)

On or about June 21, 2012, Fazon filed a third PCRA petition. (ECF 14-4 at ECF p. 1, 18). He argued that he was entitled to relief based on newly discovered evidence, namely, a signed June 5, 2012 statement[7] by Armond Wheeler, who was a fellow inmate at SCI-Smithfield at the time. (*Id.* at ECF p. 10-11, 17.) Fazon admitted his third PCRA petition was untimely but argued it could proceed because he met the newly discovered facts exception under 42 Pa. Cons. Stat. § 9545(b)(1)(ii), as he could not previously have discovered Wheeler's statement through reasonable diligence. (*Id.* at ECF p. 16-17.)

In his statement, Wheeler averred that he was "sitting on the wall in front of the [Paschall] projects" between 11:00 p.m. and 12:00 a.m. on June 12, 2001, and saw a gray minivan with four people in it pull up and park in front of him. (*Id.* at ECF p. 10.) He saw "Curt" get out and start talking to "Reds"[8] and then a man named "Dana"[9] "walk up to the driver [side] window" of the minivan, "say something," and "start shooting."

---

[7] Wheeler's statement is titled "Affidavit," but it is not notarized and does not contain the language that 28 U.S.C. § 1746 requires for it to be considered as an unsworn declaration under penalty of perjury submitted in lieu of a notarized affidavit. *See also* 42 Pa. Cons. Stat. §§ 6202-6206 (requiring similar language for unsworn declarations in Pennsylvania courts).

[8] Testimony established that Shimoyama had red facial hair. (*See, e.g.*, N.T. 12/17/2002 at 123, 182.) He was described both at trial and in postconviction proceedings as being nicknamed "Reds." (*See* N.T. 12/17/2002 at 66-68, 111; N.T. 10/18/2019 at 31.)

[9] Neither the affidavit nor Fazon's submissions identify "Dana" further. (*See* ECF 1 at ECF p. 5, 18-19; ECF 17 at ECF p. 7-8.)

8

(*Id*.) Wheeler asserted that Fazon was innocent and "not out there that night." (*Id.* at ECF p. 11.) He claimed he did not come forward earlier because he feared retribution but had changed his mind and would testify in court to the contents of the statement if called to do so. (*Id.* at ECF p. 11-12.)

On or around September 12, 2016, during the pendency of the state court proceedings, Fazon filed the *pro se* Petition for Writ of *Habeas Corpus* that is currently before this Court. (ECF 1.) It raises two claims: (1) ineffective assistance of trial counsel for failing to object to Shimoyama's preliminary hearing testimony being introduced, which he characterizes as a violation of the Confrontation Clause, and (2) various instances of prosecutorial misconduct. (*Id.* at ECF p. 5, 7; ECF 17 at ECF p. 10.) Fazon already presented the ineffectiveness claim and four of his six prosecutorial misconduct claims to the state courts in his first PCRA petition (ECF 37-1 at ECF p. 44-53) and direct appeal (ECF 14-2 at 10), respectively. Within his ineffectiveness argument, he also asserts an actual innocence claim based on Wheeler's statement and urges this Court to consider the merits of his claims pursuant to *McQuiggin*. (ECF 1 at ECF p. 5, 14.)

Respondents filed a Response on June 1, 2017, requesting that Fazon's *habeas* Petition be stayed pending completion of the ongoing state court proceedings. (ECF 14 at 1.) With leave of court, Fazon filed a Memorandum of Law in support of his Petition on September 7, 2017. (ECF 16; ECF 17.) Judge Strawbridge issued a Report and Recommendation recommending that these federal *habeas* proceedings be stayed pending Fazon's exhaustion of the newly discovered evidence claim in state court, which Judge Beetlestone adopted. *Fazon v. Kauffman*, No. 16-4913, 2017 WL 6944533 (E.D. Pa.

Dec. 21, 2017), *report and recommendation adopted*, 2018 WL 401803 (E.D. Pa. Jan. 11, 2018). (ECF 18, ECF 20.)

Fazon then amended his third PCRA petition on May 11, 2018, raising an additional claim of newly discovered evidence in the form of a notarized April 16, 2018 affidavit from Shimoyama. (*See* Amended Third PCRA Pet. at ECF p. 1, 9 (Affidavit of Richard Shimoyama)). Shimoyama averred in the affidavit that he "testified truthfully at the preliminary hearing" and "did not appear at trial because[ he] was told by detectives not to show up at trial and . . . [given] money to disappear." (*Id.* at ECF p. 9.) He swore that he "was afraid to come forward earlier because [he] thought [there] would be retaliation from the detectives." (*Id.*)

The PCRA court held evidentiary hearings on October 18, November 26, and December 26, 2019. (N.T. 10/18/2019; N.T. 11/26/2019; N.T. 1/26/2019.) Fazon testified that he had not contacted or investigated exculpatory witnesses on advice from his trial attorney. (N.T. 10/18/2019 at 39-40.) He admitted he had previously alleged that two fellow inmates at SCI-Smithfield other than Wheeler happened to witness the murders and could provide exculpatory statements. (*Id.* at 40-47.) Fazon neither obtained an affidavit from one of the alleged eyewitnesses nor filed a PCRA claim regarding their potential testimony. (*Id.* at 42-43.) He had obtained an affidavit for the other alleged eyewitness and submitted it with his second PCRA petition in 2008. (*Id.* at 44-46.) Fazon acknowledged that all three exculpatory statements were "completely different stories" but stated that he "had hope that these individuals [were] telling the truth." (*Id.* at 48.)

10

Shimoyama testified that he was on drugs "[e]very day, all day," in 2001 and did not remember what happened on the night of the murder since it had been "[t]oo long." (N.T. 11/26/2019 at 7-9.)  He initially testified that he said what officers "wanted to hear" at the preliminary hearing before claiming that he had been truthful there.  (*Id.* at 11-12, 24-25.)  He inconsistently testified that police paid him to "disappear" but also that they could have easily found him for trial because "[e]verybody knew" he was at his house.  (*Id.* at 37-38.)

When Wheeler failed to appear at the second or third hearings, the PCRA court dismissed Fazon's amended third PCRA petition, finding Shimoyama was "completely without any credibility whatsoever." (*Id.* at 3; N.T. 12/26/2019 at 3-4, 15.) Fazon's counsel filed a statement of intent to file a *Turner/Finley* brief and petitioned to withdraw as counsel.[10]  (ECF 37-1 at ECF p. 19.)

After Fazon appealed, the PCRA court issued a written opinion explaining that it had dismissed his amended third PCRA petition[11] as procedurally barred by the statute of limitations because Fazon had failed to prove the newly discovered facts exception under 42 Pa. Cons. Stat. § 9545(b)(1)(ii).  (*See* Jan. 24, 2020, PCRA Court Opinion at 5-7.) As to Shimoyama, the PCRA court found that his affidavit and evidentiary hearing testimony were not new evidence because he only swore that he would offer testimony

---

[10] *See* 210 Pa. Code § 1925(c)(4) (allowing counsel to file to withdraw from representation when they determine that issues raised under the PCRA are meritless pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*).

[11] The PCRA court's opinion erroneously identifies the petition as Fazon's fourth.

11

consistent with his preliminary hearing testimony, and that testimony had already been read into the trial record in total. (*See id.* at 6) Moreover, Fazon's evidentiary hearing testimony demonstrated "[n]o diligence whatsoever," as he had done "nothing" to obtain the absent "testimony throughout the years." (*Id.* at 6-7) Because Wheeler had not testified, the PCRA court did not evaluate the merits of Fazon's claim based on his statement. (*See id.*)

The Superior Court affirmed the PCRA court's conclusion that Fazon's "frivolous" petition was procedurally barred and adopted the PCRA court's reasoning and adverse credibility finding for Shimoyama. *See Commonwealth v. Fazon*, No. 301-EDA-2020, 242 A.3d 446, 2020 WL 6868784, at *4 (Pa. Super. Ct. Nov. 23, 2020) (table). As to Wheeler, the Superior Court found that Fazon had "failed to plead and prove the newly[ ]discovered facts exception based [solely] on the information provided in" Wheeler's statement. *Id.*

On May 15, 2024, Respondents notified the *habeas* Court that the state court proceedings had concluded on December 23, 2020.[12] (ECF 29.) Five days later, Judge Beetlestone ordered supplemental briefing on Fazon's actual innocence claim and referred this matter to me for a report and recommendation. (ECF 30.) Respondents filed

---

[12] Judge Beetlestone's 2018 stay order required Fazon and Respondents to notify the Court within thirty days after the conclusion of the state court proceedings so that Fazon's *habeas* Petition could proceed. (ECF 20.) On October 16, 2019, she directed Respondents to file status reports regarding the state court proceedings every ninety days. (ECF 22.) When Respondents finally filed their 2024 status update informing the Court that the state court proceedings had concluded in 2020, they explained that this matter had "fallen through the cracks" when the District Attorney's Office closed due to the COVID-19 pandemic and did not reopen until early 2021, after which the supervisor who had filed the then-most recent status update resigned. (ECF 29 at ¶ 4.)

their Supplemental Response on July 11, 2024.  (ECF 35.)  It noted that Fazon's actual innocence claim relied solely upon Wheeler's statement and not on Shimoyama's affidavit. (ECF 35 at 11.) Respondents argued that, even assuming that Wheeler's statement was "new," it did not satisfy the actual innocence exception because it was patently unreliable.  (*Id.* at 11-12.)

On September 6, 2024, I ordered Fazon to file a reply, if any, to Respondents' Supplemental Response by October 4, 2024.  (ECF 38.)  Fazon sent a letter stating that he had received the Order on September 23, 2024, but had not received Respondents' Supplemental Response. (ECF 40.) The Clerk of Court mailed Fazon a copy of the Supplemental Response on October 23, 2024.  (ECF 41.)  He never filed a reply.

## II.     DISCUSSION

*Habeas* proceedings pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, exist to remedy "extreme malfunctions" in state court prosecutions and are "not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted).  Before even reaching the merits of Fazon's claims for *habeas* relief, it is necessary to consider whether they are properly before the Court.  They are not, so no *habeas* relief is due.

To be timely, Fazon's claims for *habeas* relief under 28 U.S.C. § 2254 must have been filed within one year from the time that his underlying convictions became final, excluding the time during which any properly filed state post-conviction petition was pending. *See* 28 U.S.C. § 2244(d); *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012)

13

(holding that, for petitioners who do not file a direct appeal at all, the conviction becomes final when the time for pursing direct review expires).  Fazon correctly admits that his *habeas* Petition is untimely.[13]  (ECF 17 at ECF p. 3.)

Since Fazon's *habeas* Petition is untimely, it can only proceed if he can demonstrate a reason to excuse its untimeliness.  AEDPA's statute of limitations is not jurisdictional, so it "may be tolled for equitable reasons" in certain cases.  *Holland v. Florida*, 560 U.S. 631, 645 (2010). A "*credible* showing of actual innocence" can satisfy the requirements for equitable tolling. *McQuiggin*, 569 U.S. at 392 (emphasis added).  However, it is "extremely rare" for an untimely *habeas* petition to qualify for this exception.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Fazon "vehemently asserts that he is innocent" and that Wheeler's statement identifying "Dana" as the shooter is newly discovered evidence that would

---

[13] Fazon's convictions became final for *habeas corpus* purposes on July 10, 2005, ninety days after his direct appeal proceedings concluded.  *Fazon*, 872 A.2d 171; *see Clay v. United States*, 537 U.S. 522, 525 (2003) (noting ninety-day period to petition for *certiorari*).  He properly filed his initial PCRA petition on or around September 14, 2005, tolling (*i.e.,* pausing) the limitations period after sixty-six days had passed.  (*See* ECF 37-1 at ECF p. 89); 28 U.S.C. § 2244(d)(2). The 365-day limitations period then began to run again on May 29, 2008, upon the Pennsylvania Supreme Court's denial of Fazon's petition for allowance of appeal. *Fazon*, 952 A.2d 674.

While Fazon filed his second PCRA petition on or around August 29, 2008 (ECF 37-1 at ECF p. 6), its filing does not entitle him to statutory tolling because the state courts found it was untimely.  (*Id.* at ECF p. 6-7.)  *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (construing 28 U.S.C. § 2244(d)(2) to exclude untimely state court petitions from the definition of "properly filed").  Therefore, Fazon's remaining 299 days to file for *habeas* relief ran out on March 24, 2009, years before he filed either his third PCRA petition in June 2012 (ECF 14-4 at ECF p. 1, 18), or the instant *habeas* Petition in September 2016. (ECF 1 at ECF p. 16.)

have resulted in his acquittal if it had been introduced to the jury.[14] (ECF 17 at ECF p. 8-9.)

For his actual innocence claim to be credible, Fazon must produce "new reliable evidence—whether it be exculpatory scientific evidence, *trustworthy* eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). Fazon must convince the Court that, considering Wheeler's statement,

---

[14] Fazon does not argue that there is any other reason why equitable tolling should save his claims, but, because he is self-represented, the Court considers the question. Equitable tolling is appropriate only where "principles of equity would make the rigid application of a limitation period unfair," *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011), and not for "garden variety . . . excusable neglect." *Holland*, 560 U.S. at 651. To benefit from it, Fazon must show *both* that: (1) he has been diligently pursuing his rights; *and* (2) some extraordinary circumstance prevented timely filing. *Holland*, 560 U.S. at 649.

Fazon may demonstrate an extraordinary circumstance by showing: (1) the Commonwealth actively misled him; (2) he was prevented from asserting his rights in some extraordinary way; or (3) he timely asserted his rights in the wrong forum. *Johnson v. Hendricks*, 314 F.3d 159, 162 (3d Cir. 2002). Extraordinary circumstances "rarely occur in the *habeas* context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). *If* the claims in Wheeler's statement are true, the second ground *may* be satisfied. Wheeler had "not spoken to anyone" about the murders until he relayed his statement to Fazon in May 2012, and Fazon could not seek postconviction relief or investigate Wheeler without knowing he was an alleged witness. (*See* ECF 1 at ECF p. 18-19.).

However, the Court need not decide whether Wheeler's statement was true. For equitable tolling to apply, Fazon also had to show he exercised reasonable diligence in filing his *habeas* Petition and in pursuing state court remedies throughout the period of equitable tolling he seeks. *See Holland*, 560 U.S. at 653; *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). Unlike in *McQuiggin*, Fazon filed both his third PCRA petition and his *habeas* Petition within months of discovering Wheeler's testimony. (ECF 1 at ECF p. 16; ECF 14-4 at ECF p. 1, 18.) *See McQuiggin*, 569 U.S. at 389-90. However, he has not maintained reasonable diligence during the adjudication of his post-conviction proceedings. He did not produce Wheeler at evidentiary hearings and has not shown any contact with Wheeler since 2019. (*See* N.T. 11/26/2019 at 40; N.T. 12/26/2019 at 3-4.) As a result, equitable tolling cannot save Fazon's untimely claims.

it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 395 (citing *Schlup*, 513 U.S. at 329); *see Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("[W]e assess the likely impact that the new evidence would have had on reasonable jurors."). This standard ensures "a meaningful avenue by which to avoid a manifest injustice" while ensuring that Fazon's case is truly "extraordinary," recognizing the need to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup*, 513 U.S. at 324, 327.

Fazon has not met his burden to show that Wheeler's statement is trustworthy, let alone that it presents an extraordinary circumstance that would have caused a reasonable juror to reach a different verdict. First, it is an unsworn statement by a fellow inmate. *See, e.g.*, *Scott v. Lavan*, 190 F. App'x 196, 198 (3d Cir. 2006) (finding statements did not support finding of actual innocence partly because they were unsworn); *Hussmann v. Vaughn*, 67 F. App'x 667, 668-69 (3d Cir. 2003) (noting reliability of affidavits submitted by fellow inmates was "extremely dubious"); *United States v. McIntosh*, No. 03-298, 2006 WL 2382259, at *3 (M.D. Pa. Aug. 16, 2006) (discerning "no indicia of reliability with regard to the substance of [a] statement or the circumstances of its making" where it was unsworn and not made in the presence of counsel). Wheeler's serious criminal record[15] and the intervening eleven years between the murders and his statement also raise a

---

[15] Fazon's PCRA counsel explained to him on the record that she "did find that [Wheeler] was on the most wanted list of the state Board of Probation and Parole [as] one of their most wanted offenders" and that was "probably the reason he[ did] not com[e]" to the evidentiary hearings. (N.T. 12/26/2019 at 16.)

16

question as to its value. *See Schlup*, 513 U.S. at 332 ("[T]he court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."). Lastly, Fazon's failure to corroborate the identity of "Dana" or to produce Wheeler as a witness renders the probative value of the statement nil.

Wheeler's statement, without more, is insufficient to demonstrate Fazon's innocence such that the statute of limitations ought to be excused to save his untimely *habeas* Petition.[16] *See Reeves v. Fayette SCI*, 897 F.3d 154, 161 (3d Cir. 2018) ("The threshold requirement for applying the actual innocence standard is new evidence supporting the petitioner's innocence."). Therefore, the Court should not consider the merits of Fazon's claims.

---

[16] Fazon did not amend his *habeas* Petition to include Shimoyama's affidavit like he did with his third PCRA petition. (*See* ECF 17 at ECF p. 6-9; Amended Third PCRA Pet. at ECF p. 9.) As a claim based on that factual predicate is not before the Court, he may not obtain relief on that ground. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998) (noting federal courts are without jurisdiction to hear *habeas* claims where petitioners fail to "make any colorable allegation" that the underlying conviction is invalid).

Even could the Court consider the merits, Fazon's actual innocence claim would fail. Shimoyama's evidentiary hearing testimony was not newly discovered evidence because it was already "presented at trial." *Schlup*, 513 U.S. at 324. He merely testified that his preliminary hearing testimony was true and that he would "say the same thing" if called to testify again. (N.T. 11/26/2019 at 22-29.) The jury heard his preliminary testimony in its entirety. (*See* N.T. 12/17/2002 at 177-92.)

Fazon would not be able to show he is entitled to equitable tolling either. No extraordinary circumstances barred him from timely filing since the substance in Shimoyama's affidavit had already been read to the jury. *See Holland*, 560 U.S. at 649. Further, Fazon did not exhibit reasonable diligence because he made no efforts to locate Shimoyama despite being aware he could provide exculpatory testimony since the 2001 preliminary hearing. *See id.*; *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012). (ECF 37-1 at ECF p. 378-90; N.T. 10/18/2019 at 38-40.)

**III.    CONCLUSION**

Based upon a review of the state court record, the parties' filings, and the testimony offered at the evidentiary hearing, Fazon's Petition does not permit the Court to grant *habeas* relief. His claims are untimely, and he has not shown that they qualify for AEDPA's actual innocence exception. Accordingly, I recommend dismissing Fazon's Petition without issuing a certificate of appealability for any claim.[17]

Therefore, I make the following:

---

[17] Any *habeas* petitioner seeking to appeal to the circuit court must obtain a certificate of appealability, but Fazon has not shown that one should issue. *See* Fed. R. App. P. 22(b). He has not established that "reasonable jurists could debate" that his "petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" so he has not made "'a substantial showing of the denial of a constitutional right.'" *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (first quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); and then quoting 28 U.S.C. § 2253(c)(2)); *see also Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 474 (3d Cir. 2017) (same).

## RECOMMENDATION

**AND NOW**, this **10th** day of **October 2025**, it is respectfully recommended that Fazon's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* (ECF 1) be **DISMISSED WITH PREJUDICE**. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

The parties may file objections to this Report and Recommendation within fourteen days after being served with a copy. *See* E.D. Pa. Loc. R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).

                                                **BY THE COURT:**

                                                **HON. JOSÉ RAÚL ARTEAGA**
                                                *United States Magistrate Judge*
                                                *Eastern District of Pennsylvania*